## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## NEW BERN DIVISION

IN RE:

**WAYCO HAM COMPANY,**                        **CASE NO. 15-04041-5-DMW**
                                              **CHAPTER 11**
                    **DEBTOR.**

## MOTION FOR CONTEMPT AND SANCTIONS AGAINST
## CREDITOR ONDECK CAPITAL, INC.

**COMES NOW** WAYCO HAM COMPANY (the "Debtor"), by and through undersigned counsel and pursuant to §§ 105(a), 549 and 362 of Bankruptcy Code, [1] Federal Rule of Bankruptcy Procedure 9020, and E.D.N.C. LBR 9011-(b), moves this Court for entry of an Order holding Creditor ONDECK CAPITAL, INC. ("OnDeck Capital" or "OnDeck") in contempt and imposing sanctions on account of its continuous, ongoing and willful violations of the provisions of the automatic stay, the prohibition against unauthorized post-petition transfers of property of the estate, and other provisions of the Bankruptcy Code.  In support hereof, the Debtors show unto this Court as follows:

### JURISDICTION AND VENUE

1.       This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334, 151, and 157, as it arises in and concerns matters affecting the administration of bankruptcy estate in the above-captioned case, see id. §157(b)(2)(A), seeks an Order requiring OnDeck to turn over property of the estate, see id. §157(b)(2)(E), and concerns rights duly established under the Bankruptcy Code. The relief sought by the Debtor herein is a core proceeding, as that term is defined under 28 U.S.C. § 157(b)(2).

---

[1] Unless otherwise indicated herein, all statutory references are to the Bankruptcy Code, 11 U.S.C. § 101 et seq.

STUBBS PERDUE
9208 Falls of Neuse Road, Suite 201, Raleigh, NC 27615

2

2.      The Court, likewise, has the authority to hear this matter the General Order of Reference entered by the United States District Court for the Eastern District of North Carolina on August 3, 1984.

3.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391, 1408 and 1409, as all of the actions complained of and giving rise to the claims alleged herein arose in this judicial district, within which the Debtor and OnDeck regularly conduct their business operations and affairs.

## IDENTIFICATION OF THE PARTIES

4.      The Debtor filed a voluntary petition seeking relief under chapter 11 of the Bankruptcy Code on July 27, 2015 (the "Petition Date"), and currently operates as Debtor-in-Possession.

5.      The Debtor, a corporation organized and existing under the laws of the State of North Carolina, maintains its principal place of business in and around Wayne County, North Carolina.

6.      OnDeck, upon information and belief, is a corporation formed and existing under the laws of the State of Delaware, with a principal executive office located at 1400 Broadway, 25th Floor, New York, New York 10018. According to the records maintained by the Delaware Secretary of State, OnDeck was formed on May 4, 2006, and its registered agent for service of process is Corporation Service Company, with a principal mailing address of 2711 Centerville Road, Suite 400, Wilmington, Delaware 19808.

7.      OnDeck, upon information and belief, is engaged in the business of providing short-term business loans, ranging in principal amounts from $5,000.00 to $250,000.00, to various

3

small businesses across the United States of America, including small businesses located and operating in eastern North Carolina.

## STATEMENT OF THE FACTS

8.      Prior to the Petition Date, on April 16, 2015, the Debtor executed a Business Loan and Security Agreement in favor of OnDeck, in the original principal amount of $181,000.00 (the "OnDeck Loan"), a copy of which is attached hereto as **EXHIBIT A** and incorporated herein by reference.

9.      Under the terms of the OnDeck Loan, the $181,000.00 disbursed to the Debtor (the "Disbursement Amount"), was to be paid in 252 daily installment payments of $847.54, which commenced on the first business day after the Debtor received the Disbursement Amount.

10.     A portion of the Disbursement Amount, approximately $112,397.48, was retained by OnDeck Capital and applied towards a prior obligation allegedly owed by the Debtor to OnDeck.

11.     The Debtor, under the OnDeck Loan, was required to pay OnDeck the aggregate sum of $213,580.08 (the "Total Repayment Amount"), which consisted of the principal amount of $181,000.00 and interest of $32,580.08.

12.     Pursuant to the Loan, and on every Monday, Tuesday, Wednesday, Thursday, and Friday, excluding federal holidays, OnDeck automatically debited the Debtor's bank account that was maintained at Branch Banking & Trust Company ("BB&T") prior to the Petition Date, Account No. ****0225 (the "Bank Account") for the daily payment of $847.54.

13.     On July 27, 2015, counsel for the Debtor sent, by facsimile transmission and First-Class United States Mail delivery, counsel for the Debtor notified OnDeck of the filing of the

4

Bankruptcy Case, the imposition of the automatic stay under § 362 of the Bankruptcy Code, and that attempts to withdraw funds from the Bank Account would be in violation of the automatic stay (the "First Notice Letter").  A copy of the First Notice Letter is attached hereto as **EXHIBIT B** and incorporated herein by reference.

14.     The confirmation page, generated by Debtor's counsel's facsimile machine, shows that the First Notice Letter was received, via facsimile transmission, at 1:23 p.m. on July 27, 2015 (the "Fax Confirmation Page").  A copy of the Fax Confirmation Page is attached hereto as **EXHIBIT C** and incorporated herein by reference.

15.     Despite receiving the First Notice Letter, and the facsimile transmission of the same from Debtor's counsel, OnDeck ignored the notification and warning set forth therein.

16.     Following the Petition Date, and in accordance with standard procedures and guidelines, this Court issued a Notice of Chapter 11 Case, Meeting of Creditors and Deadlines [DE-4] (the "Bankruptcy Filing Notice"), a copy of which is attached hereto as **EXHIBIT D** and incorporated herein by reference.

17.     As noted on the Bankruptcy Filing Notice, and the accompanying Certificate of Notice, OnDeck received a copy and was aware of the filing of the Bankruptcy Case by the Debtor.

18.     OnDeck was, likewise, included on the Creditor Matrix, which was verified under penalty of perjury by the Debtor pursuant to the Verification of Creditor Matrix.  The Creditor Matrix and the Verification of Creditor Matrix were included along with the Voluntary Petition, Schedules and Statement of Financial Affairs filed by the Debtor on the Petition Date.

19.     Similarly, the Debtor scheduled, on the Voluntary Petition, Schedules and

5

Statement of Financial Affairs [DE-1] filed on the Petition Date, OnDeck as holding a claim arising from the OnDeck Loan.  A copy of Voluntary Petition, Schedules and Statement of Financial Affairs [DE-1] filed by the Debtor in the Bankruptcy Case is attached hereto as **EXHIBIT E** and incorporated herein by reference.

20.   On July 28, 2015, Debtor's counsel sent OnDeck additional correspondence entitled, "SECOND NOTICE OF BANKRUPTCY FILING AND NOTICE OF VIOLATION OF AUTOMATIC STAY," which reiterated that OnDeck, pursuant to §§ 362 and 549 of the Bankruptcy Code, was prohibited from engaged in any methods or measures to collect the outstanding balance of the OnDeck Loan, including exercising any and all rights it may possess to automatically withdraw amounts from the Bank Account (the "Second Notice Letter").  The Second Notice Letter, a copy of which is attached hereto as **EXHIBIT F** and incorporated herein by reference, demanded the return of the automatic withdrawal that was made on the Petition Date in the amount of $847.54 and cease all further collection efforts and automatic withdrawals from the Bank Account.

21.   The Second Notice Letter was sent to OnDeck, via Certified First-Class United States Mail, Return Receipt Requested, at the following three addresses known to the Debtor:

> OnDeck Capital, Inc.
> Attn: Corporation Service Company, Registered Agent
> 2711 Centerville Road, Suite 400
> Wilmington, DE 19808
>
> OnDeck Capital, Inc.
> Attn: Officer, Manager, Agent
> 1400 Broadway
> New York, New York 10018
>
> OnDeck Capital, Inc.
> Attn: Officer or Managing Agent

6

901 N. Stuart Street
Arlington, VA 22203

22.    The Second Notice Letter was, in fact, received by OnDeck on July 30, 2015, as evidenced by the Domestic Return Receipts that were issued and returned by the United States Postal Service.  Copies of the Domestic Return Receipts are attached hereto as **EXHIBIT G** and incorporated herein by reference.

23.    On July 27, 2015, OnDeck—absent authorization from the Court and in violation of the provisions of the automatic stay and § 549 of the Bankruptcy Code—withdrew daily payments of $847.54 from the Bank Account and applied said funds towards the outstanding balance of the OnDeck Loan.

24.    On July 30, 2015, OnDeck—without the authorization from the Court and in violation of the provisions of the automatic stay and § 549 of the Bankruptcy Code—withdrew the daily payment of $847.54 from the Bank Account and applied said funds towards the outstanding balance of the OnDeck Loan.

25.    On July 31, 2015, OnDeck—without the authorization from the Court and in violation of the provisions of the automatic stay and § 549 of the Bankruptcy Code—withdrew the aggregate sum of $1,695.08, representing the daily payments in the amount of $847.54 for July 28, 2015, and July 31, 2015.

26.    At the instruction of undersigned counsel, and to avoid any additional unauthorized withdrawals by OnDeck, the Debtor ordered that BB&T stop and not honor any automatic debit withdrawal by OnDeck for the OnDeck Loan.

27.    As is customary in the United States Bankruptcy Court for the Eastern District of North Carolina, and following the Petition Date, the Debtor established a Debtor-in-Possession

account with BB&T, into which all post-petition income and revenues were deposited (the "DIP Account"). The DIP Account had a new account number.

28.     Between July 28, 2015, and July 31, 2015, and due to difficulties poses by the stop payment placed on the Bank Account by the Debtor, upon information and belief, a representative from OnDeck contacted BB&T, inquiring into the whereabouts and status of the Bank Account and the whereabouts of any funds that the Debtor held on deposit, in any account, with BB&T.

29.     Upon information and belief, and in an effort to conceal its true motive from BB&T and the Debtor, OnDeck indicated that it needed the Debtor's updated account number for the DIP Account and other private bank account information so it could refund monies that were previously and erroneously withdrawn from the Bank Account.

30.     The Court never authorized any of transfer of funds from the Bank Account nor the DIP Account, post-petition, by OnDeck pursuant to the OnDeck Loan.  Additionally, neither the Debtor nor any of its officers or employees gave authorization, written or verbal, to automatically withdraw funds from the Bank Account or the DIP Account following the Petition Date.

31.     On August 3, 2015, absent any authorization from the Court and in violation of several sections of the Bankruptcy Code, including §§ 362 and 549, OnDeck withdrew the sum of $847.54 from the DIP Account, representing the daily payment for July 29, 2015, on the OnDeck Loan.

32.     Upon information and belief, and on August 4, 2015, OnDeck withdrew the sum of $847.54 from the Bank Account and/or the DIP Account, which belong to the Debtor, and applied said funds to the OnDeck Loan.

33.     OnDeck, on August 6, 2015, and after receiving the Notice Letters, sent an e-mail

8

communication to the Debtor, notifying it that the daily payment in the amount of $847.54 was past due and "the ACH payment request made on August 05, 2015 was rejected by your bank due to insufficient funds." (emphasis added).  A copy of this email communication, which was a demand for payment of the OnDeck Loan received by the Debtor post-petition and after OnDeck received the Notice Letters, is attached hereto as **EXHIBIT H** and incorporated herein by reference.

34.    Specifically, the DIP Account was not the bank account that was designated in the Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits) (the "Authorization Agreement"), which was made part of the OnDeck Loan. On the contrary, the Bank Account—not the DIP Account—was classified as the "Designated Checking Account" under the Authorization Agreement.

35.    The Authorization Agreement further provides as follows:

**AUTOMATIC PAYMENT PLAN.**

Enrollment in Lender's Automatic Payment Plan is required for Loan approval.  By executing this Authorization Agreement for Direct Deposit (ACH Credit) and Direct Payments (ACH Debits), ***Borrower agrees to, and hereby, enrolls in the Automatic Payment Plan and authorizes Lender to collect payments required under the terms of the Business Loan and Security Agreement by initiating ACH debit entries to the Designated Checking Account*** in the amounts and on the dates provided in the Payment Schedule set forth in the accompanying Business Loan and Security Agreement and/or for any and all amounts when due thereunder.

(emphasis added).  Furthermore, the Authorization Agreement states that "[t]he origination of ACH transactions to Borrower's account ***must comply with the provisions of U.S. law.***" (emphasis added).

9

36.     On August 5, 2015, and after learning of the DIP Account Post-petition Withdrawal, the Debtor's counsel sent correspondence to OnDeck, at all three (3) addresses on file, entitled "THIRD NOTICE OF BANKRUPTCY FILING AND NOTICE OF CONTINUING VIOLATION OF AUTOMATIC STAY," which demanded that all withdrawals from the Bank Account and the DIP Account cease immediately and the Post-petition Withdrawals be immediately returned (the "Third Notice Letter").  The Third Notice Letter, a copy of which is attached hereto as **EXHIBIT I** and incorporated herein by reference, was transmitted via FedEx Overnight Express Mail.

37.     The Third Notice Letter was, upon information in fact, received by OnDeck on August 6, 2015, as evidenced by the Delivery Confirmation Receipts issued by FedEx, copies of which are attached hereto as **EXHIBIT J** and incorporated herein by reference.

38.     As of the Petition Date, all funds in the Bank Account and the DIP Account, which were involuntarily withdrawn by OnDeck, constitute "property of the estate" as that term is defined under § 541 of the Bankruptcy Code.   OnDeck, without the authorization of the Debtor and/or this Court, and in violation of the provisions of the automatic stay and §549 of the Bankruptcy Code, withdrew the aggregate sum of $4,237.70 from the Bank Account and the DIP Account, which are funds belonging to the Debtor and constitute property of the estate, following the Petition Date.

39.     Despite the provisions of the automatic stay, which protect the Debtor from any attempts by OnDeck to collect the outstanding balance of the OnDeck Loan, including through automatic withdrawal of funds from the Bank Account and the DIP Account, OnDeck has and will likely continue to take steps to collect indebtedness and obligations evidenced by the OnDeck

10

Loan that was executed prepetition, including the repeated attempts to withdraw funds from the Bank Account and the DIP Account without the authorization of this Court, the Debtor and the OnDeck Loan itself.

40.    OnDeck has ignored the provisions of the automatic stay, which prohibits any act to collect, assess or recover claims against the Debtor that arose prior July 27, 2015, the Petition Date in the above-captioned case.  From the Petition Date until the filing of this Motion, OnDeck has engaged in a pattern of conduct and methods that were in in willful violation of the provisions of the automatic stay because the indebtedness owed by the Debtor under the OnDeck Loan, which was the subject of these collection methods, arose from funds loaned to the Debtor piror to the Petition Date.

41.    As described herein, the actions of OnDeck are, and continue to be, in direct violation of the Discharge and various provisions of the Bankruptcy Code, including §§ 362 and 524, of which it had actual and/or constructive knowledge.

42.    Specifically, and since the Petition Date, OnDeck has engaged in numerous instances of conduct and communications including, but not limited to the remittance of correspondence and communications to the Debtor and its officers, as well as undertaking electronic transfers of funds from the Bank Account and the DIP Account, which seek to collect on amounts allegedly owed under the OnDeck Loan.

43.    Notwithstanding receipt of the Notice Letters and the Bankruptcy Filing Notice, and with the actual and/or constructive knowledge that the Debtor had filed petition for relief under the Bankruptcy Code and was protected by the provisions of the automatic stay from further collection of the OnDeck Loan, OnDeck repeatedly withdrew funds from the Bank Account and

11

the DIP Account and applied said funds to the OnDeck Loan.  Additionally and on August 6, 2015, OnDeck sent a demand notice, via e-mail communication, to the Debtor which demanded payment of the past due amount of $847.54.

44.     Specifically, and despite having notice that its actions were in direct violation of the provisions of the automatic stay and the Bankruptcy Code, OnDeck caused the automatic withdraws to be made from the Bank Account and the DIP Account post-petition.  These actions were undertaken after receipt of the Notice Letters from Debtor's counsel.

45.     Upon information and belief, OnDeck has engaged in a pattern and practice of violating the provisions of the automatic stay and the Bankruptcy Code, by attempting to collect amounts from the Debtor, and other businesses who have sought relief under chapter 11 of the Bankruptcy Code, See In re New Innovative Products, Inc., Case No. 15-02833-5-SWH (Bankr. E.D.N.C.), with the actual and/or constructive knowledge that such activities are prohibited by the provisions of the Bankruptcy Code.

46.     OnDeck, as a for-profit enterprise seeks to collect any and all amounts owed by borrowers for amounts previously loaned, irrespective of the rights of the borrowers and the express prohibitions proscribed by the Bankruptcy Code and the Orders of this Court. OnDeck seeks to collect amounts, for which the Debtor and other borrowers in North Carolina, and undertake collection actions that are prohibited by the provisions of the automatic stay and the Bankruptcy Code.

47.     The Debtor is informed and believes that OnDeck employs these collection methods and model on a regular basis as part of its standard operating procedure regarding collection of delinquent accounts receivable from borrowers, regardless of whether the borrower

12

has sought relief under the Bankruptcy Code.

48.     Continuous and repeated attempts by creditors to collect amounts, which are prohibited by the provisions of the automatic stay, also requires debtors, their families and their counsel to incur time and expense in investigating the source and validity of the debt.[2] Here, upon being the victim of OnDeck's relentless and willful attempts to collect the OnDeck Loan, and understanding that it was entitled to the protections of the automatic stay, the Debtor and its officers became alarmed, confused, and frustrated by the continued collection activities of OnDeck post-petition, where it had completed all of the requirements imposed upon them by chapter 11 of the Bankruptcy only to later be faced with the same ongoing collection activities that drove them into bankruptcy in the first instance.

49.     Despite its attempts, as well as those of undersigned counsel to curb the collection activities, OnDeck will continue to attempt, and collect, the daily payment amount under the OnDeck Loan from the Bank Account and the DIP Account, take such other further actions and attempts to collect the OnDeck Loan from the Debtor.

**REQUEST FOR RELIEF**

50.     Section 362(a)(6), upon the filing of a petition for relief under the Bankruptcy Code, automatically imposes a stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case. . . ." 11 U.S.C. § 362(a)(6).  "[A]n individual injured by any willful violation" of the stay may recover damages. 11 U.S.C. 362(k)(1). "To constitute a willful act, the creditor need not act with  specific intent but must only commit an

---

[2] These activities, as displayed by OnDeck, may result in a majority of victimized debtors calling the offices of their former bankruptcy counsel to complain and assert that counsel did not perform his or her job during the underlying bankruptcy case with respect to these claims.

13

intentional act with knowledge of the automatic stay." <u>Citizens Bank v. Strumpf (In re Strumpf)</u>, 37 F.3d 155, 159 (4th Cir. 1994), <u>rev'd</u> <u>on</u> <u>other</u> <u>grounds</u>, 516 U.S. 16 (1995); <u>Lofton v. Carolina Finance, LLC, (In re Lofton)</u>, 385 B.R. 133, 140 (Bankr. E.D.N.C. 2008) (emphasizing that "willfulness does not refer to the intent to violate the automatic stay, but the intent to commit the act which violates the automatic stay").

51.     Pursuant to § 362(k)(1), debtors injured by a violation of the automatic stay "shall recover actual damages . . . and in appropriate circumstances, may recover punitive damages." Actual damages may compensate for costs and attorney's fees, and may also include compensation "for actual emotional distress caused by a creditor's violation of the automatic stay." <u>In re Heeley</u>, No. 14-03291-5-DMW, slip op. 4 (Bankr. E.D.N.C. Dec. 11, 2014) (citation omitted).

52.     Section 362 may be enforced by, and any violations redressed through, the independent cause of action set forth in §362(k), as well as the inherent and statutory contempt powers of the bankruptcy court pursuant to § 105(a).  <u>See</u>, <u>e.g.</u>, <u>In re Powell</u>, 10-03859-8-RDD, 2012 WL 2412042, at *2 (Bankr. E.D.N.C. June 26, 2012); <u>In re Wynne</u>, 422 B.R. 763, 768 (Bankr. M.D. Fla. 2010) ("It is widely accepted[] . . . that Bankruptcy Courts may invoke their statutory contempt power under § 105 to provide a remedy for willful violations of the discharge injunction."); <u>see</u> <u>also</u> <u>In re WVF Acquisition, LLC</u>, 420 B.R. 902 (Bankr. S.D. Fla. 2009) (emphasizing that bankruptcy courts "ha[ve] the inherent power to award compensatory damages for willful violations of the automatic stay as this falls within the ambit of the bankruptcy court's civil contempt power.")

53.     Section 105(a) authorizes bankruptcy courts to issue orders or make any determination necessary to enforce, implement or prevent an abuse of the provisions of the

14

Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. See Marrama v. Citizens Bank of Mass., 549 U.S. 365 (2007) (holding that § 105(a) grants bankruptcy courts "broad authority . . . to take any action that is necessary or appropriate 'to prevent an abuse of process.'" (citation omitted); 11 U.S.C. § 105(a).[3]  Apart from § 105(a) and similar to their Article III counterparts, bankruptcy courts "enjoy inherent power to sanction parties for improper conduct." Mapother & Mapother, P.S.C. v. Cooper (In re Downs), 103 F.3d 472, 477 (6th Cir. 1996).  Pursuant to its inherent contempt powers, a bankruptcy court may sanction conduct "which abuses the judicial process." Chambers v. NASCO, Inc., 501 U.S. 32, 44-45 (1991).  Conduct abusive of the judicial conduct includes "bad faith conduct" and "willful disobedience of a court order." Id. at 45-46; see Barnes v. Dalton, 158 F.3d 1212, 1214 (11th Cir. 1998) (emphasizing that, in addition to vexatious, wanton or oppressive conduct, bad faith conduct includes "hampering enforcement of a court order").

54.     To enforce and carry out the provisions of their orders and the Bankruptcy Code, courts have the authority to "issu[e] sanctions in the form of 'actual damages, attorney's fees, and when appropriate, punitive damages.'" In re Kirkbride, No. 08-00120, 2010 WL 4809334, at *3 (Bankr. E.D.N.C. Nov. 19, 2010) (quoting In re Cherry, 247 B.R. 176,187 (Bankr. E.D. Va.

---

[3] Section 105(a), in its entirety, reads as follows:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

11 U.S.C. § 105(a).

15

2000)); see, e.g. Am. Airlines Inc. v. Allied Pilots Ass'n, 228 F.3d 574, 585 (5th Cir. 2000) ("Judicial sanctions in civil contempt proceedings may, in a proper case, be employed for either or both of two purposes: to coerce the defendant into compliance *with the court's order,* and to compensate the complainant for losses sustained.").

55.     Bankruptcy courts "have inherent contempt powers in all proceedings, including bankruptcy, 'to achieve the orderly and expeditious disposition of cases.'" Jove Eng'g, Inc. v. IRS (In re Jove Eng'g, Inc.), 92 F.3d 1539, 1553 (11th Cir. 1996) (citation omitted).  The purpose of civil contempt is to "coerc[e] compliance with the orders of the court and/or to compensate a party for losses incurred as a result of the noncompliance." In re Armstrong, 99 B.R. 713, 714 (Bankr. E.D.N.C. 1989).

56.     In the Fourth Circuit, and to establish civil contempt, the proponent or movant must establish each of the following elements by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge; (2) . . . that the decree was in the movant's "favor"; (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violations; and (4) . . . that [the] movant suffered harm as a result.

Ashcraft v. Conoco, Inc., 218 F.3d 288, 301 (4th Cir.2000) (internal quotations omitted); accord In re Adams, 2010 WL 2721205 at *2 (Bankr. E.D.N.C.), aff'd, No. 5:10-CV-340-BR (E.D.N.C. Jan. 24, 2011).

57.     The Debtor is an "individual," as defined under the Bankruptcy Code and Budget Service Co. v. Better Homes of Virginia, Inc., 804 F.2d 289 (4th Cir. 1986), and entitled to seek sanctions for OnDeck's violations of the automatic stay under § 362(k) of the Bankruptcy Code.

58.     OnDeck's post-petition actions, course of conduct, and collection efforts, as alleged

16

herein, are in violation of the automatic stay imposed by § 362(a) of the Bankruptcy Code. Specifically, OnDeck violated the automatic stay because its post-petition conduct and collection methods constituted, *inter alia*:

    A.    Acts to obtain possession of, or exercise control over, the funds contained in the Bank Account, which were property of the estate, in violation of § 362(a)(3) of the Bankruptcy Code;

    B.    Acts to enforce, against the funds in the Bank Account and the DIP Account, its security interest that arose pursuant to the OnDeck Loan and prior to the Petition Date, in violation of § 362(a)(5) of the Bankruptcy Code; and

    C.    Acts to collect, assess and recover monies allegedly owed under the OnDeck Loan against the Debtor that arose prior to the Petition Date, in violation of the § 362(a)(6) of the Bankruptcy Code.

59.    At all times relevant herein, the Debtor was protected by either the provisions of the automatic stay under § 362(a) and § 549, which collectively prohibited OnDeck from engaging in any act, method or practice to recover from the Debtor the amount allegedly owed on the OnDeck Loan following the Petition Date, including undertaking any automatic withdrawal of funds from the Bank Account and the DIP Account. OnDeck, with the actual and/or constructive notice and knowledge of the applicability of the automatic stay under § 362(a) and the provisions of the Bankruptcy Code, engaged in pattern of conduct and undertook various methods to collect the amount owed on the OnDeck Loan by automatically withdrawing amounts for the daily payments on the OnDeck Loan on multiple occasions. See Maryland v. Antonell Creditors' Liquidating Trust, 123 F.3d 777, 783 (4th Cir. 1997) (recognizing that "for purposes of enforcing bankruptcy orders, we inquire whether . . . the notice received was 'of such a nature as reasonably to convey the required information.'" (quoting Mullane v. Central Hanover Bank & Trust, 339 U.S. 306, 314 (1950))).

60.    All of the Post-petition Withdrawals, which involuntarily and without any approval

17

of the Court depleted the balance of the Bank Account and the DIP Account, in the amount of the daily payment owed on the OnDeck Loan, post-petition, were attempts to collect the OnDeck Loan, which arose prior the Petition Date.

61.     The subjective beliefs and intent of OnDeck, in undertaking these methods and collection practices relating to the OnDeck Loan, are irrelevant in determining whether it possessed actual or constructive knowledge.  See Hardy v. United States (In re Hardy), 97 F.3d 1384, 1388-89 (11th Cir. 1996).  Its receipt of the Bankruptcy Filing Notice and the Notice Letters from undersigned counsel, are sufficient, by themselves, to establish that it had actual and constructive knowledge for purposes of establishing civil contempt. See Jove, 92 F.3d at 1555-56.

62.     Given that, on at least three separate occasions, OnDeck was served with notice of the filing of the Bankruptcy Case and informed of the protections afforded to the Debtor by virtue of the automatic stay, its continued violations and post-petition collection of the OnDeck Loan are willful and deliberate.

63.     In accordance with E.D.N.C. LBR 9011-3(b), OnDeck received the Notice Letters from Debtor's counsel, which provided ample notice of the filing of the Bankruptcy Case and multiple opportunities to cure its ongoing violations of the automatic stay.  OnDeck, however, did not avail itself of the opportunity to cure the violations of the automatic stay opting, instead, to continue to withdraw, on a daily basis, amounts from the Bank Account and the DIP Account.

64.     It is undisputed that OnDeck had notice of the Bankruptcy Case, per its receipt of the Bankruptcy Filing Notice and the Notice Letters from undersigned counsel for the Debtor. OnDeck knew—when in employed the above-referenced measures and undertook the course of conduct, in violation of the Bankruptcy Code, that any collection of the indebtedness evidenced by

18

the OnDeck Loan was prohibited, including the automatic withdrawal of funds from the Bank Account and the DIP Account, by the provisions of the Bankruptcy Code, including the automatic stay.  The repeated post-petition communications and conduct of OnDeck, aimed at collection of the OnDeck Loan from the Debtor, continuous indirect threats, past due notices, and other unlawful conduct, constitute acts to collect or recover the OnDeck Loan, which arose prior to the Petition Date.

65.     Notwithstanding the continued efforts of Debtor and its counsel to facilitate the compliance of OnDeck, as evidenced by the Notice Letters, it has and continues to engage in conduct demonstrating a willful disregard for the authority of this Court and the provisions of the Bankruptcy Code, including §§ 362(a) and 549.  Entry of the Order for Relief in the Bankruptcy Case operated as an injunction, absent seeking the appropriate relief (which OnDeck has not done), against any action to collect any amounts allegedly owed, assess fees or engage in other collection-related conduct relating to the OnDeck Loan.

66.     OnDeck's course of conduct and actions, with respect to collection of the OnDeck Loan, were willful in that it knew that the protections afforded by the automatic stay had been invoked as of July 27, 2015, and—with that explicit knowledge—consciously disregarded those prohibitions when it continued to automatically withdraw amounts and funds from the Bank Account and the DIP Account following the Petition Date.  Additionally, it communicated with the Debtor and directed that those past due amounts be immediately repaid.  Receipt of the Bankruptcy Filing Notice and the Notice Letters is sufficient to establish the knowledge element of the two-part test. See Hardy, 97 F.3d at 1390 (emphasizing that receipt of notice stating that a debtor received a discharge  is  sufficient to establish the knowledge element for contempt); Jove,

19

92 F.3d at 1555-56.

67.    Additionally and as a direct result of the aforementioned willful actions and conduct of OnDeck, the Debtor has suffered significant financial damages, including the loss of the use, enjoyment and rights in those funds that were withdrawn by OnDeck from the Bank Account and the DIP Account, inconvenience and financial harm, to be proven at the hearing on this matter.  The Debtors have suffered, and will continue to suffer, actual damages as a direct result of OnDeck's willful actions, including significant and overbearing aggravation and inconvenience on each of the subject occasions that it attempted to collect the OnDeck Loan post-discharge.    Additionally, the actions and conduct displayed by OnDeck also caused the Debtor to incur attorneys' fees, which were reasonable and necessary to protect the rights it received under the Bankruptcy Code and prevent OnDeck from engaging in any further unlawful and contemptuous conduct.

68.    After commencing the above-captioned case, being laid financially bare and scrutinized under the Bankruptcy Code, the Debtor has performed every requirement placed upon it by the Bankruptcy Code with the expectation that upon the Petition Date it would receive a breathing spell and have the opportunity to thrive and reorganize without continued harassment from OnDeck.  On the contrary, OnDeck's actions "have not only had an impact on the debtors in terms of time and energy consumption, but also in their ability to obtain a fresh start through bankruptcy." Kirkbride, 2010 WL 4809334, at *2.

69.    Based on the pattern and practice of OnDeck, which is displayed herein and in New Innovative Products, Case No. 15-02833-5-SWH, this Court should award the Debtor substantial punitive damages which are sufficient to prevent OnDeck from continuing to engage in this

20

pattern and employ measures, which are in willful disregard of the Orders of this Court and the provisions of the Bankruptcy Code and otherwise deter such future conduct in the United States Bankruptcy Court for the Eastern District of North Carolina.

70.    The pattern of conduct and actions perpetrated by OnDeck, as alleged herein, was willful, wanton, and demonstrated reckless disregard for, and indifference to, the well-being, operations and business of the Debtor.  Upon information and belief, and as demonstrated herein, OnDeck has engaged in a pattern of similar conduct against other small businesses throughout the State of North Carolina, including at least one other small business that has sought relief under the Bankruptcy Code before this Court.

71.    Absent an award of punitive damages by this Court, and upon information and belief, OnDeck will continue to engage in conduct and undertake collection actions, which were in direct violation of the protections afforded to debtors under the Bankruptcy Code, including the automatic stay.

## **CONCLUSION**

72.    By and through the aforementioned conduct and actions, OnDeck has violated the automatic stay imposed by § 362 of the Bankruptcy Code.  Despite its attempts, as well as those of undersigned counsel to curb the collection activities of OnDeck post-petition, it continued to automatically and involuntarily withdraw amounts from the Bank Account and the DIP Account, which constituted collection of the OnDeck Loan in violation of the automatic stay. Specifically, and despite receiving the Notice Letters and having explicit notice that its actions were in direct violation of the automatic stay and the Bankruptcy Code, OnDeck continued to automatically withdraw funds from the Bank Account and the DIP Account and apply, the Post-petition

21

Withdrawals to the outstanding balance of the OnDeck Loan.   OnDeck's actions have not only had an impact on the Debtor in terms of time, labor, and energy consumption, but also in its ability to initiate and commence the reorganization process under chapter 11 of the Bankruptcy Code.

73.    OnDeck's actions have not only had an impact on the Debtor in terms of time, labor, and energy consumption, but also in its ability to initiate and commence the reorganization process under chapter 11 of the Bankruptcy Code.

74.    On account of the foregoing, and as a direct and proximately result of OnDeck continuous and willful violations of the automatic stay, as alleged herein, the Debtor is entitled to an award of compensatory damages and sanctions against OnDeck, representing those damages, expenses and costs incurred as a direct and proximate result of the collection actions, in an amount to be determined and set by the Court.   Additionally, and on account of the malicious, deceptive, unscrupulous, and egregious nature of OnDeck's conduct, specifically in willfully ignoring the Notice Letters and automatically withdrawing amounts from the DIP Account post-petition, the Debtor is entitled to an award of punitive damages in an amount sufficient to deter OnDeck from engaging in future conduct that constitutes willful violations of the automatic stay and the Bankruptcy Code.

**NOTHING HEREIN, HOWEVER, SHALL PREJUDICE OR OTHERWISE PRECLUDE THE DEBTOR FROM SEEKING DAMAGES AND OTHER RELIEF ARISING FROM THE CONDUCT OF ONDECK, INCLUDING BUT NOT LIMITED TO REMEDIES FOR VIOLATIONS OF APPLICABLE NON-BANKRUPTCY FEDERAL LAW AND NORTH CAROLINA LAW.**

**WHEREFORE** and for all of the foregoing reasons, the Debtor respectfully requests entry of an Order providing the following relief:

1.    Allowing the Motion, as filed by the Debtor;

22

2.      Holding OnDeck in contempt for its continuous and systematic willful violations of the automatic stay imposed by §362, as well as § 549;

3.      Imposing sanctions against OnDeck on account of these willful violations and continued willful and deliberate conduct;

4.      Awarding the Debtor damages and sanctions against OnDeck in an amount in excess of $25,000.00, on account of its willful violations of the automatic stay and the Bankruptcy Code, including but not limited to, actual damages, inconvenience, aggravation, reasonable attorneys' fees, expenses, costs and other damages incurred in connection with this Sanctions Motion and the Turnover Motion, as well as punitive damages; and

5.      Allowing such further relief as the Court may deem just and proper.

Respectfully submitted, this the 6th day of August, 2015.

**STUBBS & PERDUE, P.A.**
*Counsel for Debtor*

BY:    ___s/Joseph Z. Frost_____

TRAWICK H. STUBBS, JR., NCSB No. 4221
tstubbs@stubbsperdue.com

MATTHEW W. BUCKMILLER, NCSB No. 35194
mbuckmiller@stubbsperdue.com

JOSEPH Z. FROST, NCSB No. 44387
jfrost@stubbsperdue.com

9208 Falls of Neuse Road, Suite 201
Raleigh, North Carolina 27615
Telephone: (919) 870-6258
Facsimile:  (919) 870-6259

23

## UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
## NEW BERN DIVISION

IN RE:

WAYCO HAM COMPANY,                    CASE NO. 15-04041-5-DMW
                                      CHAPTER 11
                DEBTOR.

### NOTICE OF EMERGENCY MOTION

NOTICE IS HEREBY GIVEN of the **EMERGENCY MOTION FOR CONTEMPT AND SANCTIONS AGAINST CREDITOR ONDECK CAPITAL, INC.** (the "Motion") filed simultaneously herewith by WAYCO HAM COMPANY (the "Debtor") in the above captioned case. This **NOTICE OF EMERGENCY MOTION** (the "Notice") is given and served as of the date indicated below.

YOUR RIGHTS MAY BE AFFECTED.  You should read these papers carefully and discuss them with your attorney, if you have one.  If you do not have an attorney, you may wish to consult one.

If you do not want the court to grant the motion, or if you want the court to consider your views on the matter, before **5:00 P.M.** on **AUGUST 18, 2015**, you or your attorney must file with the court, pursuant to Local Rule 9013-1 and 9014-1, a written response, an answer explaining your position and a request for hearing at:

**United States Bankruptcy Court for the Eastern District of North Carolina**
**Post Office Box 791**
**Raleigh, North Carolina 27602**

Pursuant to the Memorandum from Chief Bankruptcy Judge J. Rich Leonard, EDNC, dated February 24, 2005, attorneys practicing in the United States Bankruptcy Court for the Eastern District of North Carolina, including attorneys admitted *pro hac vice*, are required to file all documents electronically [including new bankruptcy petitions, motions, memoranda of law, and other pleadings, but excluding proofs of claim and documents to be placed under seal in accordance with Local Bankruptcy Rule 5005-4(6)].  Any documents required to be filed electronically, but presented in paper form on or after April 1, 2005, shall be accompanied by an application for an exemption from this rule and a proposed order granting the relief sought.  The application shall state the reason(s) why electronic filing would impose an extreme hardship on the attorney.  Local Bankruptcy Rules pertaining to electronic filing may be found on the Court's website www.nceb.uscourts.gov.

24

If you mail your response to the Court for filing, you must mail it early enough so the court will <u>receive</u> it by the date stated above.  You must also mail a copy to the parties listed in the Certificate of Service, including:

| | |
|---|---|
| Trawick H. Stubbs, Jr. | OFFICE OF THE BANKRUPTCY |
| Matthew W. Buckmiller | ADMINISTRATOR |
| Joseph Z. Frost | Attn: Marjorie K. Lynch |
| STUBBS & PERDUE, P.A. | 434 Fayetteville Street, Suite 640 |
| 9208 Falls of Neuse Road, Suite 201 | Raleigh, North Carolina 27601 |
| Raleigh, North Carolina 27615 | |

A hearing on the Motion will be conducted at **2:30 P.M.** on **AUGUST 19, 2015**, at the United States Bankruptcy Court for the Eastern District of North Carolina, Raleigh, North Carolina.  If you or your attorney do not take these steps, the court may decide that you do not oppose the relief sought in the motion or objection and may enter an Order granting the relief requested in the Motion.

Respectfully submitted this, the 6th day of August, 2015.

**STUBBS & PERDUE, P.A.**
*Counsel for Debtor*

TRAWICK H. STUBBS, JR., NCSB No. 4221
tstubbs@stubbsperdue.com

MATTHEW W. BUCKMILLER, NCSB No. 35194
mbuckmiller@stubbsperdue.com

JOSEPH Z. FROST, NCSB No. 44387
jfrost@stubbsperdue.com

9208 Falls of Neuse Road, Suite 201
Raleigh, North Carolina 27615
Telephone: (919) 870-6258
Facsimile:  (919) 870-6259

25

## CERTIFICATE OF SERVICE

The undersigned hereby certifies, under penalty of perjury, that on this day, copies of the foregoing **EMERGENCY MOTION FOR CONTEMPT AND SANCTIONS AGAINST CREDITOR ONDECK CAPITAL, INC.** and **NOTICE OF EMERGENCY MOTION** were served electronically utilizing the CM/ECF system of the United States Bankruptcy Court for the Eastern District of North Carolina, notification of which was remitted to the following individuals:

Marjorie K. Lynch
OFFICE OF THE BANKRUPTCY ADMINISTRATOR
434 Fayetteville Street, Suite 640
Raleigh, NC 27601

The undersigned further certifies that the foregoing pleadings were served, via Certified Mail Return-Receipt Requested, on the following non-CM/ECF participants:

OnDeck Capital, Inc.
Corporation Service Company, Reg. Agent
2711 Centerville Road, Suite 400
Wilmington, DE 19808

OnDeck Capital, Inc.
Attn: Manager or Agent
1400 Broadway, 25th Floor
New York, NY 10018

OnDeck Capital, Inc.
Attn: Manager or Agent
901 North Stuart Street
Arlington, VA 22203

Executed this, the 6th day of August, 2015.

_____*s/Joseph Z. Frost*_____
JOSEPH Z. FROST, NCSB No. 44387
jfrost@stubbsperdue.com

STUBBS & PERDUE, P.A.
9208 Falls of Neuse Road, Suite 201
Raleigh, North Carolina 27615